ROBERT R. POWELL, SBN 159747
**POWELL & ASSOCIATES**
925 W. Hedding Street
San Jose, CA 95126
T: (408) 553-0201 F: (408) 553-0203
E: rpowell@rrpassociates.com

Ryan A. Graham, Esq., Cal. Bar No. 310186
**LAW OFFICES OF RYAN A. GRAHAM, ESQ.**
1049 Havenhurst Dr., No. 510
West Hollywood, CA 90046-6002
Tel.: (323) 792-6377 | Fax: (323) 345-5035
Email: ryan@ryan.law

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| TIMOTHY HARPER;<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF SAN JOSE, EDGARDO "EDDIE" GARCIA, JASON DWYER, CHRISTOPHER SCIBA, JARED YUEN;<br><br>    Defendants. | Case No.:<br><br>PLAINTIFF'S COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1. Plaintiff Timothy Harper ("Plaintiff") brings this action under 42 U.S.C. § 1983 to vindicate violation of his First and Fourth Amendment rights.

1

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

2. During the summer of 2020, cities across the United States erupted in protests following a series of tragic deaths involving aggressive law enforcement tactics used against members of communities of color—such officers are sworn to protect and serve.

3. Plaintiff attended one such protest in San Jose, on May 2, 2020, where he was shot with a less-lethal projectile because he voiced his opposition to another protestor being shot in the head with a pepper-ball. Adding insult to injury, Plaintiff had actually *assisted* a wounded officer to safety earlier in the day, the circumstances of which were broadcast at least locally on the television news media. These two events were the subject of a news broadcast in which Plaintiff criticized the San Jose Police Department's response to his shooting, and which would serve as the catalyst for even more retaliation.

4. Days later, Plaintiff stopped his truck in downtown San Jose to help an injured woman who had been hit by a car fleeing police—giving first aid to the victim. When San Jose Police Department officers responded, they remarked to Plaintiff that they had seen him tell his story to the news, warned him to stay out of downtown, and detained him for an hour with no apparent purpose except to intimidate Plaintiff into silence.

**JURISDICTION/VENUE**

5. The Court has original jurisdiction over this action as it presents a federal question under 42 U.S.C. § 1983; the Court has supplemental jurisdiction to adjudicate claims arising under California law. 28 U.S.C. §§ 1331, 1343(a)(3), 1367(a). Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district and defendants reside in this district and state.

**CLAIM REQUIREMENT**

6. Plaintiff is required to comply with an administrative claim requirement under California law in order to make claims based on state law. G.C. 910, *et seq*. Plaintiff has complied with all applicable requirements and submitted a timely Government Tort Claim Notice pursuant to G.C. 910, et seq., which has been rejected either in writing, or by operation of law, by the CITY.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

**PARTIES**

7.    Defendant CITY OF SAN JOSE ("CITY") is a municipal corporation, organized under the laws of the State of California. The CITY operates, manages, directs and controls the San Jose Police Department (SJPD), which employs other defendants in this action.

8.    Defendant EDGARDO "EDDIE" GARCIA, at all times mentioned herein, was employed as the Chief of Police for Defendant CITY, the highest position in the SJPD. As Chief, Defendant GARCIA was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all SJPD officers and DOES 1–10. Defendant GARCIA also was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the SJPD alleged herein were committed. Defendant Garcia is sued in his individual and official capacities.

9.    Defendant JASON DWYER, at all times mentioned herein, was employed as an SJPD Captain and was assigned as the Special Operations Commander for Defendant CITY. As Captain, Defendant DWYER was responsible for the screening, training, supervision, discipline, counseling, and control of all SJPD officers under his command. Defendant DWYER also was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the SJPD alleged herein were committed. Defendant Dwyer is sued in his individual and official capacities.

10.    Defendant CHRISTOPHER SCIBA, at all times mentioned herein, was employed as a police sergeant for Defendant CITY. Defendant SCIBA is sued individually and as a police sergeant for the Defendant CITY. By engaging in the conduct described below, Defendant SCIBA acted under the color of law and in the course and scope of his employment for Defendant CITY. By engaging in the conduct described herein, Defendant SCIBA exceeded the authority vested in him as a law enforcement officer under the United States Constitution and as an employee of the Defendant CITY.

11.    Defendant JARED YUEN, at all times mentioned herein, was employed as a police officer for Defendant CITY. Defendant YUEN is sued individually and as a police

3

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

officer for Defendant CITY. By engaging in the conduct described below, Defendant Yuen acted under the color of law and in the course and scope of his employment for Defendant CITY. By engaging in the conduct described here, Defendant YUEN exceeded the authority vested in him as a law enforcement officer under the United States Constitution and as an employee of the CITY.

12. The true names and capacities of the defendants sued herein as DOES 1-10 are unknown to Plaintiff, who therefore sues said defendants by such fictitious names, and Plaintiff will seek leave to amend this complaint to show their true names and capacities when the same are ascertained. At all material times, each of DOES 1–10 were an employee/agent of Defendant CITY as members of the SJPD and were acting within the course and scope of that relationship.

13. Plaintiff is informed and believes, and thereon alleges, that each of the defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the defendants herein gave consent, aid, and assistance to each of the remaining defendants, and ratified and/or authorized the acts or omissions of each defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

14. At all material times, each defendant was jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs' Constitutional rights and other harm.

15. At all material times, each defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

16. At all material times, Defendants GARCIA, SCIBA, DWYER, YUEN, and DOES 1–10 acted pursuant to the actual customs, policies, practices and procedures of the SJPD and Defendant CITY.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

# STATEMENT OF FACTS

### *Background*

17.  Throughout the summer of 2020, following the killing of George Floyd by Minneapolis police officers, Americans assembled in cities across the nation to express their views on the relationship between law enforcement officers and the communities they serve and to protest police brutality and systemic racism.

18.  From May 29, 2020 through June 2, 2020, one such protest was held in downtown San Jose. Throughout the protest, SJPD utilized so-called *less-lethal* weapons on those perceived to be part of the protest. Such weapons included tear gas, pepper balls, and kinetic impact projectiles (KIPs). Common forms of KIPs include rubber/plastic bullets, bean bag rounds, foam or sponge rounds, and pellet rounds.

19.  To Plaintiff's knowledge – at this time – there are no fewer than seven (7) Plaintiffs alleging similar abuses of authority and violations of rights to those alleged by Plaintiff herein, related to the use of "less-lethal" weapons on those Plaintiffs, which is known to be the number of Plaintiffs from one single lawsuit in this District Court (Case #20-cv-04824.

20.  Despite the terminology, less-lethal weapons can be fatal. Upon contact with a human body, a kinetic round creates an impact shock wave and produces blunt force trauma. For example, the kinetic energy created by a thrown fastball pitch is 97 foot pounds, while a 40-gram bean bag (which were used by SJPD on protestors on May 29, 2020), creates 120 foot pounds of kinetic energy. One 2017 article in a prominent medical journal, *BMJ Open*, found that 3% of persons shot with kinetic rounds (*i.e.*, rubber bullets, bean bags, and foam rounds) die from injury and that 15.5% suffer serious harm such as trauma to the neck, head, chest, and abdomen. Facial injuries can also result in vision loss.

21.  To the date of this filing, Plaintiff still possesses an easily palpable knotted chunk of muscle on his abdominal wall from the impact of the less-lethal round; his physician has told him it will likely take over a year to subside, if it does.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

22. Consequently, when an officer uses less-lethal weapons on a person, injury should be expected, ranging in magnitude from the moderate to the severe—and even to the fatal. Relatedly, the law enforcement agencies who choose to use such weapons should expect their members to cause such injury in the absence of adequate training or in the absence of policies on the appropriate usage of such weapons.

23. Defendant SCIBA, a sergeant with the SJPD Training Unit, prepared SJPD training materials on the use of less-lethal weapons. These materials were used to train SJPD officers.

24. In the materials, Defendant SCIBA included a slide with a cartoon that mocks shots to the groin. The cartoon depicts two cavemen who fell a giant mammoth with their tiny arrow by shooting it in the groin. This slide immediately follows another slide which covers where the shooter *should* aim and which body parts to avoid. The entire 50-slide presentation includes no mention of de-escalation, and the final slide synthesizes the SJPD message to trainees regarding use of less-lethal weapons as follows: "**_Do not hesitate. Always win_**."

25. Defendant YUEN, who Plaintiff is informed and believes fired the round that struck his abdomen, but pleads in the alternative it was one of the DOE Defendants herein, did not have training on less-lethal weapons in at least the last five years.

26. Defendants GARCIA and SCIBA authorized officers to be equipped with these less-lethal weapons and gave them license to shoot protestors, even though they had not been sufficiently trained on how to deploy the weapons safely.

27. Captain DWYER would later say that "when my boots hit the ground, at Seventh and Santa Clara, I stepped into a war zone," and that "at 5pm on Friday, I made the call immediately. It wasn't that difficult." On that Friday, May 29, SJPD fired thirty-one pepper ball projectiles, thirty-two tear gas canisters and at least 400 foam batons and/or rubber bullets into the crowds. Captain DWYER later stated in a press conference on June 4 that he has no regrets about his decision of May 29.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

### *The Shooting*

28. On May 29, 2020, Plaintiff went to observe the demonstrations, at which time he was engaged in constitutionally-protected activity concerning matters of great public concern in a public forum, including the exercise of his rights to freedom of speech, assembly, and association.

29. The protest was mostly peaceful. Police presence, however, increased around 4:00 pm on May 29, 2020. A small army of police in riot gear approached from the East on Santa Clara Street. There was another contingent of uniformed law enforcement to the North, on Sixth Street, at the same time. At all relevant times, no incident occurred justifying SJPD to categorize the protest as an unlawful assembly or to use force against the demonstrators.

30. Nevertheless, SJPD deployed tear gas and kinetic impact projectiles, such as pepper-ball projectiles, rubber/plastic projectiles, and sponge rounds, on the assembled demonstrators.

31. During the events of May 29, 2020, a protestor approached SJPD officers with a cell phone, attempting to videorecord them. An SJPD officer took the phone from the protestor's hand and threw it behind him. In response, the protestor punched the officer once in the face, bringing him (the officer) to the ground.

32. Plaintiff, seeing the officer on the ground, bleeding from his mouth, immediately ran to provide assistance. Plaintiff picked the injured officer up from the ground and, along with several other officers, carried him away from the area to a vehicle where Plaintiff remained for several moments to ensure his safety.

33. Approximately 2 to 3 hours later, Plaintiff witnessed a protestor get shot in the head with a pepper-ball projectile. Plaintiff shouted at the officers for their behavior and was instructed by SJPD to step back (*i.e.*, away from the officers).

34. Plaintiff complied and began the process of walking backwards away from the officers. It was while Plaintiffs was walking backwards, all captured on a video, that Defendant YUEN fired a rubber/plastic bullet at Plaintiff, which struck Plaintiff in the

7

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

stomach. The impact left a massive (not less than 14" diameter) circular deep-tissue bruise and knotting of subcutaneous tissue.

35. Defendant YUEN's conduct was completely unjustified. Plaintiff was *complying* with the instruction to step back. Plaintiff was 30 feet away from the officers; his hands were empty; and he was standing by himself (*i.e.*, not in a crowd). He did not make any threatening motions or statements. No reasonable officer could reasonably interpret his behavior as threatening—let alone to a degree that justified any use of force against Plaintiff; this was an act of gratuitous violence

36. Plaintiff had done nothing more than call attention (verbally) to another protestor being shot in the head with a pepper-ball—for which he was then punished by being shot with a less-lethal weapon.

37. These events were also covered by the news media. In a segment produced by the Bay Area's ABC 7 News, Plaintiff can be seen providing assistance to the SJPD officer—holding up the officer's legs while two other officers lifted the officer's arms/shoulders. In the same segment, Defendant (Chief) GARCIA stated the following regarding Defendant YUEN: "I'm not happy with his actions. I'm sure if Jared [YUEN] was here he'd be embarrassed as well. But I will tell you I know Jared, and he's a good kid, who made a mistake, who let his emotions get the better of him."

38. The segment also features a brief interview with Plaintiff, during which Plaintiff told his story, and also expressed his disagreement with Defendant GARCIA's response. Plaintiff stated that Defendant GARCIA was backing Defendant YUEN, stated that citizens do not want officers like Defendant YUEN, and called on the SJPD to fire Defendant YUEN.

### *The Detention*

39. On June 2, 2020, Plaintiff was driving through the downtown San Jose area, near the intersection of 6th Street and St. John Street, where he noticed that a woman was laying in the middle of the road, injured.

8

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

40. Plaintiff was one of the first people on the scene of the accident. He stopped his truck in the street to protect the injured female from oncoming traffic, and then began to administer first aid. He placed a towel over her forehead, which was cut open and bleeding. Plaintiff also placed a backpack under the victim's leg to support what appeared to be a broken ankle.

41. While Plaintiff did not witness the impact that caused the female's injury, Plaintiff is informed and believes that the injured female was riding a scooter when she was hit by an oncoming vehicle, and that the driver of the vehicle was fleeing police after doing doughnuts[1] in front of a line of police motorcycles. Plaintiff is further informed and believes that the driver was suspected of shooting at officers. Plaintiff did not witness the shooting, however.

42. While Plaintiff was administering first aid, SJPD officers responded to the scene and relieved Plaintiff. Plaintiff made clear that he did not witness the accident and asked if his backpack which he had placed under the victim's leg could be returned, since officers had taken over the medical assistance efforts. Officers instructed Plaintiff to stand away from them, but assured him "you'll get it back."

43. Plaintiff returned to his truck and attempted to leave but was instructed by DOES 1–10 that (1) he could not leave and (2) his truck needed to stay at the scene as it was a *part* of a crime scene.

44. Plaintiff's truck, however, was not part of any crime scene—and Plaintiff was not a witness to any criminal activity. Nevertheless, DOES 1–10 detained Plaintiff at the scene of the accident and refused to relinquish Plaintiff's truck for approximately an hour. Despite detaining Plaintiff (again, who was not a witness), DOES 1–10 *did* permit another person who *was* a witness to drive away. During Plaintiff's conversation with one of the

---

[1] Referring to a driving maneuver in which a driver causes a vehicle to spin continuously, creating rubber skid marks that form the shape of circular doughnut.

9

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

DOES 1–10, said DOE Defendant told Plaintiff that they had seen him on the news and warned him that he should stay away from the downtown area.

45. Plaintiff was neither a suspect nor a witness—he was simply a good Samaritan. At no point was Plaintiff told he was suspect either, and there is no reason for his detention other than his statements made to ABC 7 news.

46. After an ambulance transported the victim away from the scene, Plaintiff was permitted to leave, but was told he would have to pick up his backpack from the hospital as it had been sent with the victim.

### Aftermath

47. At no point was Plaintiff cited, arrested, or prosecuted for his conduct during the protests.

48. Notably, on June 16, Defendant GARCIA (SJPD's Police Chief) modified the police duty manual to prohibit the use of rubber bullets in crowds, except to target someone with a weapon or attacking others.

### DAMAGES

49. As a consequence of Defendants' conduct, Plaintiff suffered physical injury to his midsection where the less-lethal projectile made impact. Plaintiff lost one day of work, and has medical bills associated with his injuries. Plaintiff has also suffered emotional distress stemming from his First and Fourth Amendment injuries. The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive. Plaintiffs are therefore entitled to award of punitive damages against Defendants GARCIA, SCIBA, DWYER, and YUEN.

### CLAIMS FOR RELIEF

**First Claim for Relief**
**First Amendment—42 U.S.C. § 1983**
**(Plaintiff v. All Defendants)**

50. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

51. By the actions and omissions described above, Defendants violated 42 U.S.C. §1983, depriving Plaintiffs of the clearly-established and well-settled right to be free from interference with, or retaliation for, their exercise of constitutionally protected rights, including but not limited to speech, assembly, association, and conscience, as secured by the First Amendment, as incorporated by the Fourteenth Amendment.

52. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

53. As a direct and proximate result of the acts and/or omissions of Defendants, as set forth above, Plaintiffs sustained injuries and damages as set forth at paragraph 49, above. Defendants YUEN's and DOES 1–10's conduct entitles Plaintiff to punitive damages and penalties allowable under 42 USC §1983 as set forth at paragraph 49, above. Plaintiff also claims reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

**Second Claim for Relief**
**Fourth Amendment—42 U.S.C. § 1983**
**(Plaintiff v. All Defendants)**

54. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

55. By the actions and omissions described above, Defendant YUEN, GARCIA, DWYER, and SCIBA violated 42 U.S.C. §1983, depriving Plaintiff of the clearly-established and well-settled right to be free from excessive or unreasonable force as secured by the Fourth Amendment.

56. By the actions and omissions described above, Defendants DOES 1–10 violated 42 U.S.C. § 1983, depriving Plaintiff of the clearly-established and well-settled right to be free from unreasonable searches and seizures as secured by the Fourth Amendment.

11

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

57. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

58. As a direct and proximate result of the acts and/or omissions of Defendants, as set forth above, Plaintiffs sustained injuries and damages as set forth at paragraph 49, above. Defendants YUEN's and DOES 1–10's conduct entitles Plaintiff to punitive damages and penalties allowable under 42 USC §1983 as set forth at paragraph 49, above. Plaintiff also claims reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

### Third Claim for Relief
### *Monell* Liability, First and Fourth Amendment—42 U.S.C. § 1983
### (Plaintiff v. Defendant CITY)

59. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

60. The unconstitutional actions/omissions of Defendants YUEN and DOES 1–10 resulted from the following customs, policies, practices, and/or procedures of Defendant CITY, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the SJPD:

a. to interfere with, obstruct, and/or violate the rights of individuals in their exercise of constitutionally protected rights, and to chill and/or deter those individuals from exercising their rights, including but not limited to their right to freedom of speech, assembly, association, conscience, and press;

b. to use less lethal weapons for crowd control in a manner, and under circumstances, where such use of force would be objectively unreasonable;

12

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

    c. to use less lethal weapons against individuals who are peacefully and lawfully exercising their First Amendment rights, and against such individuals because of their viewpoint and/or the perceived content of their expression;

    d. to select and/or allow Defendant YUEN to participate in a role where YUEN could shoot demonstrators and others at the San Jose protest with rubber bullets and/or other munitions, selecting his own targets, despite his not having been trained on less lethal weapons in at least the last five years;

    e. by affirmatively training SJPD officers to aggressively use less lethal weapons such that the injuries suffered by Plaintiff were certain; and

    f. to select and/or allow Defendant SCIBA to participate in a role where SCIBA could train other officers regarding use of force, less-lethal munitions, and anti-bias, despite his known history in the department, including his evaluations and prior complaint and misconduct history, and without due concern for Defendant SCIBA' adherence to generally accepted law enforcement standards concerning bias, truthfulness, judgment, and use of force.

    61. Defendants CITY, GARCIA, DWYER, and SCIBA failed to properly train, instruct, monitor, supervise, and discipline Defendants YUEN and DOES 1–10 with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

    62. The unconstitutional actions and/or omissions of Defendants were known, and were ordered, approved, tolerated and/or ratified by policy making officers for the SJPD, including but not limited to Defendants GARCIA, DWYER, and SCIBA.

    63. The aforementioned customs, policies, practices, and procedures, as well as the failures to properly and adequately train, instruct, monitor, supervise and discipline of Defendants CITY, GARCIA, DWYER, and SCIBA were the moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 USC § 1983, as more fully set forth above.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

64. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants CITY, GARCIA, DWYER, and SCIBA, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees as set forth in paragraph 49, above.

### Fourth Claim for Relief
### California Bane Act—Cal. Gov. Code § 52.1
### (Plaintiff v. All Defendants)

65. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

66. The Bane Act, codified at California Government Code section 52.1, prohibits any person from interfering by threats, intimidation, or coercion with the exercise or enjoyment by any individual of rights secured by the Constitution or laws of the United States.

67. Defendants CITY, GARCIA, DWYER, SCIBA, YUEN, and DOES 1–10 violated the Bane Act by subjecting Plaintiff to threats and intimidation, thereby interfering with his rights under the First and Fourth Amendments to the United States Constitution, as alleged in the first, second, and third claims for relief. As a result of these Defendants' conduct, Plaintiff was injured physically and emotionally.

68. As a direct and proximate result of the unconstitutional actions and omissions of Defendants CITY, GARCIA, DWYER, SCIBA, YUEN, and DOES 1–10, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees, and Defendant YUEN's and DOES 1–10's conduct entitles Plaintiff to punitive damages, as set forth in paragraphs 49, above.

### Fifth Claim for Relief
### Assault
### (Plaintiff v. Defendants YUEN and DOES 1–10)

14

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

69. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

70. Specifically incorporating ¶¶ 25 and 34, Defendants YUEN and DOES 1–10 placed Plaintiff in a state in which he (Plaintiff) reasonably believed that he was about to be touched in a harmful or offensive manner.

71. As a direct and proximate result of the unlawful actions of Defendants YUEN and DOES 1–10, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees, and Defendant YUEN's and DOES 1–10's conduct entitles Plaintiff to punitive damages, as set forth in paragraphs 49, above.

### Sixth Claim for Relief
### Battery
### (Plaintiff v. Defendants YUEN and DOES 1–10)

72. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

73. Specifically incorporating ¶¶ 25 and 34, Defendants YUEN and DOES 1–10 intentionally made physical contact with Plaintiff, without Plaintiff's consent, while in the course and scope of their employment with Defendant CITY, placed Plaintiff in state in which he reasonably believed that he was about to be touched in a harmful or offensive manner.

74. As a direct and proximate result of the unlawful actions of Defendants YUEN and DOES 1–10, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees, and Defendant YUEN's and DOES 1–10's conduct entitles Plaintiff to punitive damages, as set forth in paragraphs 49, above.

### Seventh Claim for Relief
### IIED
### (Plaintiff v. Defendants YUEN and DOES 1–10)

75. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.:

76.	Specifically incorporating ¶¶ 25 and 34, Defendants YUEN and DOES 1-10 engaged in outrageous conduct by firing a less-lethal weapon into Plaintiff's body; in committing such actions, Defendants YUEN and DOES 1–10 intended to cause, or acted with such reckless disregard of causing, and did actually cause, severe emotional distress to Plaintiff.

77.	As a direct and proximate result of the unlawful actions of Defendants YUEN and DOES 1–10, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees, and Defendant YUEN's and DOES 1–10's conduct entitles Plaintiff to punitive damages, as set forth in paragraphs 49, above.

## DEMAND FOR JURY TRIAL

78.	Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff respectfully requests the following relief:

1. General, special and compensatory damages in an amount to be proven at trial;
2. Punitive damages against the individually-named Defendants;
3. Statutory damages and/or attorney's fees against all Defendants pursuant to 42 U.S.C. § 1988.


Date: January 21, 2021                     ___/s/ Robert R. Powell_____
                                           ROBERT R. POWELL
                                           Attorney for Plaintiffs

Plaintiff's Complaint for Damages
Harper v. City of San Jose, et al.
Case no.: